IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


JARED M. QUEEN                                                    PLAINTIFF
#1017403

v.                             No: 4:16-cv-00672 JM-PSH


JOHN RANDALL                                                    DEFENDANT


## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Proposed Findings and Recommendation have been sent to United States District Judge James M. Moody Jr.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must:  (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I.  Introduction

Plaintiff Jared M. Queen, a former inmate at the Faulkner County Detention Center ("FCDC"), filed this *pro se* civil rights complaint against Defendant Major John Randall in both his individual and official capacities.  *See* Doc. No. 1.  Queen seeks $2.5 million in damages for Randall's alleged violation of his constitutional rights.  *Id.*  Specifically, Queen alleges that FCDC staff failed to protect him from an attack by other inmates which resulted in a broken jaw.  *Id.* at

3.  Queen further alleges that after his broken jaw was wired shut, jail staff did not provide him with an adequate diet.  *Id.*

Before the Court are Defendant Randall's motion for summary judgment, supporting brief, and statement of undisputed material facts (Doc. Nos. 22-24) as well as Queen's Response (Doc. No. 26).  Randall's statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and that Randall is entitled to judgment as a matter of law.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Undisputed Facts

*Undisputed Facts Submitted by Randall*

Queen was received into custody by the FCDC on June 16, 2016. Doc. No. 24-1 at 1, 3. On August 6, 2016, Queen was allegedly attacked by multiple other detainees. *Id.* at 1, 5. Randall had no knowledge of Queen's alleged attack. *Id.* at 1. Randall is not medical staff or medically trained personnel. He does not make medical decisions for the inmates but follows the orders given by the doctor and medical staff at the FCDC. *Id.* Queen was taken to Conway Regional Health System following the August 2016 altercation. *Id.* at 1, 7, 10. At the time, Queen's jaw was not wired shut, and he was instructed to eat soft foods. *Id.* at 1, 7-10. On August 7, 2016, Nurse Monte Munyan ordered that Queen receive a chopped diet. *Id.* at 1, 12. On August 11, 2016, Dr. Garry Stewart, the jail doctor, ordered a chopped diet for Queen. *Id.* at 1, 23. On August 12, 2016, the medical staff instructed jailers to inspect all food trays to ensure the kitchen staff had adequately chopped Queen's food. *Id.* at 1, 13. Queen had jaw surgery on September 2, 2016, at which point his jaw was wired shut. *Id.* at 1, 11. The post-surgery instructions provided that all foods should be blended with liquids. *Id.* at 1, 9.

Although Queen requested Ensure® nutrition drinks ("Ensure") several times following his surgery, Ensure was never prescribed by a medical professional. *Id.* at 2, 28. Queen filed a medical request on September 13, 2016, admitting that the jail was giving him "liquid" food to eat and that they were putting the food in the blender to give to him; Queen stated that he did not like the blended food and it made him throw up. *Id.* at 2, 32. It was noticed on September 13, 2016, that Queen had removed the wires from his jaw; the nurse ordered that a blended diet continue. *Id.* at 2, 20. On September 14, 2016, Queen filed a grievance stating he was on a hunger strike. *Id.* at 2, 28. Again, on September 19, 2016, Queen filed a grievance stating that he could not eat

the "blended up" food provided by the jail.  *Id.* Randall did not make the decision on what food to provide Queen following his surgery but instead followed the orders provided to him by the medical staff.  *Id.* at 2.

*Queen's Response*

Queen does not dispute the facts submitted by Randall but adds to them.  He points out that while medical department notes say he was to continue a blended diet on September 13, 2016 (Doc. No. 24-1 at 26), notes dated September 27, 2016, say he was to continue on a "pureed" diet (Doc. No. 24-1 at 19).  Queen further points out that he had been asking to be put on a vegetarian or vegan diet for some time prior to the August 2016 incident that resulted in his broken jaw.  He states that he complained of having all his food blended together, and maintains that he could not eat what was given to him.  None of the facts submitted by Queen dispute the facts submitted by Randall, and accordingly, Randall's facts are accepted as undisputed.  The Court will also treat the additional facts raised by Queen as undisputed (although they are immaterial as explained herein).

### IV. Analysis

#### A.    Official Capacity Liability

Randall correctly asserts that Queen does not a state a claim against Randall in his official capacity. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity."  *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against the defendants in their official capacities is in essence a suit against the County itself.  *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998).  A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor.  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013).  Accordingly, Randall can only be held liable in his official capacity if Queen can establish that a constitutional violation was committed pursuant to "an official custom, policy,

or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009). Queen has not alleged that a custom or policy of Faulkner County was the moving force behind the claimed violations of his constitutional rights. Accordingly, Randall is entitled to summary judgment on Queen's official capacity claims.

      **B.**      **Qualified Immunity**

      Randall argues he is entitled to qualified immunity with respect to Queen's individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

      *Failure-to-Protect*

      Queen alleges that "[o]n August 6, 2016, Faulkner County Detention Center (Unit 2) staff failed to provide protection when staff members set me up and had inmates jump me resulting in a broken jaw." Doc. No. 1 at 3. The only individual Queen sued is Randall.

To succeed on a failure-to-protect claim, Queen must show that there was a substantial risk of harm to him and that Randall was deliberately indifferent to that risk. A correctional officer is liable for failing to protect an inmate if the inmate can make the following two-part showing:

> A correctional official "violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). . . .

*Jones v. Wallace*, 641 Fed. Appx. 665, 666 (8th Cir. 2016).

Queen has not specifically alleged that Randall set him up to be attacked by other inmates, and in his response to Randall's motion for summary judgment, Queen states "I filed a complaint on Major John Randall because he failed to provide an adequate diet for me when I went to my second surgery and my jaw was wired shut." Doc. No. 26 at 1. Queen says nothing about a failure-to-protect claim in his response. Additionally, the Court notes that in the grievances attached to Randall's affidavit, Queen states that he "was set up by [Corporal] Kelley . . .", Doc. No. 24-1 at 29, and "you told me you were investigating kelley setting me up, well im telling you that he did," Doc. No. 24-1 at 27-28. Accordingly, Queen does not clearly assert a failure-to-protect claim against Randall.

Randall may not be held liable under § 1983 unless he was personally involved in or had direct responsibility for the failure to protect Randall from a known risk. *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct

responsibility for, a deprivation of his constitutional rights.") (internal quotations and citations omitted). Randall submitted an affidavit stating that he had no knowledge of the attack on Queen; Queen has provided no evidence or even an allegation that Randall did. Because Queen does not allege that Randall was personally involved in the failure to prevent the attack on him or had any knowledge that such an attack would occur, Queen does not state a failure-to-protect claim against Randall, and Randall should be awarded summary judgment on this claim.

*Inadequate Diet*

Queen alleges that "the [FCDC] staff members are failing to provide adequate food now that my jaw is wired shut. Medical staff had adequate food ready in the form of ensure when FCDC staff denied the allowance of ensure." Doc. No. 1 at 3. Although Queen claims that Randall is responsible for his diet in his response, he provides no evidence to prove that allegation. Randall, however, has provided evidence that medical professionals put Queen on a blended diet. Accordingly, Queen has not shown that Randall was personally responsible for the blended food diet he received.

Furthermore, Queen has not shown that the diet he received after his jaw surgery was constitutionally inadequate. The treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 832 (1970). To prevail on an Eighth Amendment claim, an inmate must show: (1) the condition was serious enough to deprive him of the minimal civilized measure of life's necessities, or to constitute a substantial risk of serious harm, and (2) officials were deliberately indifferent to the inmate's health and safety. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *Frye v. Pettis County Sheriff Dept.*, 41 Fed. Appx. 906 (8th Cir. 2002) (unpub. per curiam); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (plaintiff must prove a serious deprivation of "the minimal civilized measure

of life's necessities" and "offending conduct [that is] wanton").  A plaintiff asserting an Eighth Amendment violation must prove both objective and subjective elements.  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels v. Vincenz*, 382, F.3d 870, 875 (8th Cir. 2004) (citations and quotation marks omitted).

Prisoners have a right to adequate nutrition, and failure to provide it may constitute deliberate indifference that violates the Eighth Amendment.  *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992).  While an inmate is not generally entitled to receive a particular type of food, if the food provided is not nutritionally adequate, the Eighth Amendment may be implicated. *See Burgin v. Nix*, 899 F.2d 733 (8th Cir. 1990).  Deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities.  Whether a deprivation falls below this threshold depends on the amount and duration of the deprivation. *Berry v. Brady*, 192 F.3d 504, 506-08 (5th Cir.1999).  *See also Whitnack v. Douglas County,* 16 F.3d 954 (8th Cir. 1994).

Here, Queen does not claim, nor is there evidence to prove, that the blended meals he received following his jaw surgery failed to provide sufficient nutrition or calories.  He does not claim, nor is there evidence to prove, that he was denied food at any time while confined at FCDC.  In fact, the undisputed evidence proves that Queen was regularly provided blended meals at the facility per the post-surgery instructions and the orders of Dr. Garry Stewart and Nurse Monye Munyan.  *See* Doc. No. 24-1 at 9, 19, 20.  The surgical instructions provided: "If your jaw is wired, you will need to eat foods that have been blended with liquids.  You will have to eat these through a syringe or straw."  *Id.* at 9.  Queen implies in his response and in one grievance that he could not

8

get the blended food down past wires and rubberbands, but he provides no evidence (and alleges no facts) to support a claim that he could not in fact swallow the blended food. Reviewing all of his grievances, it is clear that he complained because he did not like having all his food blended together and wanted to receive Ensure drinks instead. Specifically, Queen made the following complaints about the blended food:

On September 13, 2016, Queen grieved: "Listen I have been denied my tray today at lunch by Lewis, saying I'm still on a liquid diet."[1] Doc. No. 24-1 at 27. On September 14, 2016, Queen grieved:

> I am on hunger strick [sic] and I swear to Jesus Christ above that you will have to feed me in a tube, or get the ensure that the doctor originally percribed [sic]. I can not eat the makeshift bullshit you all are blending up, it will not go down past these wires and rubberbands. Also you can't just blend up a tray and tell me I have too eat it all blended up together, I am not an animal, and I don't eat certain things. We are on a certain calorie diet, well check this out, the first 3 days we came back from surgery, the blender was broken and all we was offered was rotten apple sauce that made me throw up with indigestion for days. So I will not eat your trash on no level. I need ensure to make sure I get the right nutrition.

*Id.* at 28. On September 19, 2016, Queen grieved: "I appeal the fact that will not supply me with ensure, that I was prescribed by doctor JOHN MARK JOHNSON, because my jaw is wired shut. I cannot eat this blended up bullshit you people are trying to make me eat." *Id.* On September 27, 2016, Queen grieved:

> I had to go without eating until I had to take my wires out of my mouth, [due to jaw being broke in 2 places] just so I could eat. I could not suck food down that major Randle had deemed for me to eat, which was all the food grinded up all together at one time. I was literally discusted [sic] and sick to where I was throwing it up, and almost sufficating [sic] due to my jaw being wired shut.

*Id.* at 29. In a medical complaint to Nurse Monyan on September 4, 2016, Queen complained, "Due to the fact that my jaw is wired shut, I am unable to eat the food given to me. I am losing

---

[1] Basic capitalization and punctuation have been corrected in these quotes by Queen.

weight without being able to gain it.  I need to be placed on an ensure diet for the proteins and

nutrients."  Doc. No. 24-1 at 31.  On September 13, 2016, Queen complained:

> Do you realize that I have not been able to eat this liquid shit you all deemed
> necessary for me too [sic] eat because it makes me throw up, I have almost
> suffocated [sic] from having my mouth closed up and trying too [sic] eat this
> bullshit.  You put all the food together in a blender and you expect me to drink that
> shit.  I don't eat certain things and you all are trying to force this on us . . .

*Id.* at 32.  Queen provides no evidence that he was ever prescribed Ensure.

In his response, Queen implies that he could not eat the blended meals because they

contained meat and he is a vegetarian or vegan.   The failure to provide a vegetarian diet is not a

constitutional violation unless there is a religious or medical need for such a diet.  *See LaFevers v.

Saffle*, 936 F.2d 1117, 1120 (10th Cir. 1991) (the mere denial of a requested vegetarian diet is

insufficient to establish a cognizable Eighth Amendment claim); *Campbell v. Cauthron*, 623 F.2d

503, 508 (8th Cir. 1980).  Queen has provided no basis for his preference for vegetarian meals.

Additionally, Queen's distinction between a pureed diet and a blended diet is a distinction that

makes no difference.  The surgical instructions were to blend his food with liquid so he could drink

it through a straw.  His grievances and medical complaints show that his problem with the blended

diet was not that it was too course or thick, but that all his food (including food he did not like)

was blended together.

While the blended meals may not have been to his liking, Queen has failed to establish that

being provided this diet while he healed from jaw surgery denied him the minimal civilized

measure of life's necessities or subjected him to a substantial risk of serious harm.  Additionally,

Queen has not claimed or proven that the blended meals caused him any harm.  *See* 42 U.S.C.

1997e(e) (showing of physical injury required in federal civil action brought by inmate seeking

compensatory damages for injury suffered in custody).  While he complained about weight loss in

one medical complaint, he did not raise that in his complaint or his response to Randall's motion for summary judgment.  Thus, there is no Eighth Amendment violation, and Randall is entitled to judgment as a matter of law on this claim.

## IV.  Conclusion

The undersigned recommends that Randall's motion for summary judgment be granted. Queen's official capacity claims for money damages should be dismissed, and Randall is entitled to qualified immunity on Queen's individual capacity claims.

IT IS THEREFORE RECOMMENDED THAT:

1.     Randall's motion for summary judgment (Doc. No. 22) be GRANTED, and Queen's claims against him be DISMISSED WITH PREJUDICE.

2.     The Court certify that an *in forma pauperis* appeal taken from the order and judgment dismissing this action is considered frivolous and not in good faith.

DATED this 8th day of January, 2018.

_____

UNITED STATES MAGISTRATE JUDGE